IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:25-cv-3548-SKC

YOUSSOUF DIALLO,

    Petitioner,

v.

JUAN BALTAZAR, *et al.*,

    Respondents.

---

## ORDER

---

Petitioner Youssouf Diallo is a citizen of Guinea who is currently being detained at the Aurora Contract Detention Facility. Dkt. 1, ¶¶1, 2. Petitioner entered the United States without inspection and has resided here continuously since at least January 2024. *Id.* at ¶50.

On January 9, 2024, U.S. Immigrations and Customs Enforcement officers encountered Mr. Diallo near the Mexico – Arizona border. *Id.* at ¶3. The officers detained Mr. Diallo pending a credible fear interview, which he was found to have, and issued a Notice to Appear dated January 10, 2024. *Id.* at ¶1. The Department of Homeland Security issued a superseding Notice to Appear on January 25, 2025. *Id.* at ¶4. This second notice designated Mr. Diallo as a noncitizen "present in the United States without being admitted or paroled" under 8 U.S.C. § 1182(a)(6)(A)(i).

1

*Id.*; see also Dkt. 1-2, p.5. Thereafter, Petitioner was released on his own recognizance pursuant to 8 U.S.C. § 1226(a). *Id.* at ¶5.

In December 2024, Mr. Diallo filed an application for asylum, and he was issued a work authorization and social security number in connection with his asylum case. *Id.* at ¶6. According to his paperwork, Mr. Diallo missed a remote check-in appointment in July 2025, but he did subsequently appear at the ERO Newark Field Office on September 27, 2025, based on a "call in" letter he received. Dkt. 1-2, pp.10, 13. Mr. Diallo was detained at the September check-in purportedly pursuant to 8 U.S.C. § 1225(b)(2)(A). Dkt. 1, ¶9. He was transferred to Colorado in October 2025. *See* Dkt. 1-2, p.19-20.

Mr. Diallo filed a Petition for Writ of Habeas Corpus on November 6, 2025, seeking an order from this Court directing Respondents to affect his immediate release, or in the alternative, to provide him with a bond hearing. Dkt. 1. He contends he is subject to detention, if at all, pursuant to 8 U.S.C. § 1226(a). *Id.* Magistrate Judge Starnella, who was assigned to the case at the time, ordered Respondents[1] to respond to the Petition within sixty days of service and show cause why it should not be granted. Dkt. 4. Respondents filed their Response on January 20, 2026. Dkt. 7. Judge Starnella also gave Petitioner 21 days from Respondents'

---

[1] "Respondents" refers to Juan Baltazar, the Warden of the Aurora ICE Processing Center; Robert Hagan, the Director of the Denver ICE Field Office; Kristi Noem, the Secretary of the United States Department of Homeland Security; Todd Lyons, the Acting Director of ICE; and Pamela Bondi, the United States Attorney General.

answer to file a Reply. Dkt. 4. Although Mr. Diallo has not yet filed his Reply, the Court, in its discretion, addresses the Petition without awaiting further briefing.

The Court has jurisdiction over this matter pursuant to Section 2241 of Title 28, which authorizes it to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "[T]he traditional function of the writ is to secure release from illegal custody." *Id*. Noncitizens may properly challenge the lawfulness of their detention through habeas proceedings. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).

The Court has considered the Petition, the Response, the various attachments, and the governing law. Because Petitioner's challenge is fundamentally legal in nature, the Court declines to hold a hearing. *See* 28 U.S.C. § 2243. For the reasons shared in the following discussion, the Court GRANTS the Petition.

**ANALYSIS**

This matter presents a similar factual background and procedural posture to another of the Court's recent cases, *Hernandez v. Baltazar*, No. 1:25-cv-3688-SKC-SBP, 2025 WL 3718159, at *1 (D. Colo. Dec. 23, 2025). In *Hernandez*, this Court conducted a review of the governing statutes relied on by the parties here and concluded that when 8 U.S.C. §§ 1225 and 1226 are read together, they "cover [noncitizens] presenting at arrival (under § 1225) and then *everybody else* (under

3

§ 1226)." *Hernandez*, 2025 WL 3718159, at \*6 (citing *J.G.O. v. Francis*, No. 25-CV-7233 (AS), 2025 WL 3040142, at \*4 (S.D.N.Y. Oct. 28, 2025)) (emphasis in original). Because Mr. Hernandez had been present in the United States for more than a decade, the Court found that Respondents were unlawfully detaining him under § 1225, and that he was only properly detained under § 1226. *Id.*

In their Response to the Petition for Habeas Corpus, Respondents argue Mr. Diallo's request should be denied because he is properly detained pursuant to 8 U.S.C. § 1225(b)(2)(A)'s mandatory detention provision as an "applicant for admission" to the United States. Dkt. 7. These arguments and Respondents' statutory analysis, however, are indistinguishable from those the Court has already rejected in materially similar habeas cases. Consequently, the Court adopts and incorporates its statutory analysis and conclusions from *Hernandez*, *supra*, as though stated fully herein.

Even more, in this case, the Government has consistently treated Mr. Diallo as detained under § 1226(a) since the date he was first apprehended, and settled law precludes the Government from switching gears to argue he is now somehow subject to § 1225(b)(2). *Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at \*5 (N.D. Ill. Oct. 24, 2025). To begin, immigration officials apprehended Mr. Diallo near the Mexico – Arizona border, but then released him on his own recognizance.[2] Contrary

---

[2] That he was released on his own recognizance reflects "a determination by the government that [Mr. Diallo] is not a danger to the community or a flight risk." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at \*7

4

to Respondents' argument that Mr. Diallo has not been released or paroled into the United States, "[c]ourts have recognized that release on recognizance constitutes a form of conditional parole from detention housed in the provisions of § 1226's discretionary detention." *Patel*, 2025 WL 2996787, at *5. *See also J.U. v. Maldonado*, No. 25-CV-04836 (OEM), 2025 WL 2772765, at *6 (E.D.N.Y. Sept. 29, 2025) (collecting cases); *Martinez v. Hyde*, 792 F. Supp. 3d 211, 215 (D. Mass. 2025) (Respondents' contrary theory of the procedural history cannot make sense of Petitioner's release on recognizance because individuals detained following examination under section 1225 can only be paroled into the United States "for urgent humanitarian reasons or significant public benefit.").[3]

In addition, on Mr. Diallo's Notice to Appear, the immigration official checked the box stating, "You are [a noncitizen] *present in the United States* who has not been admitted or paroled," rather than the box stating Mr. Diallo was "an arriving [noncitizen]." Dkt. 1-2, p.5. And Mr. Diallo was given an authorization to work and an accompanying social security number. Dkt. 1, ¶6; Dkt. 1-2, pp.9-10. To be sure, a

---

(N.D. Cal. Sept. 12, 2025). And his DHS file confirms that he has no prior criminal history and does not appear to be a threat to national security, border security, or public safety. Dkt. 1-2, pp.10. Indeed, Mr. Diallo has secured employment, is engaged to be married, and recently purchased property with his fiancée, all of which undercuts any notion that he is a flight risk. *Id.* at pp.18-21.

[3] According to his DHS file, Mr. Diallo was released on his own recognizance due to a lack of bed space (Dkt. 1-2, p.10), which is neither a humanitarian reason nor one of significant public benefit. Thus, there can be no credible argument Mr. Diallo was released pursuant to § 1225.

5

noncitizen cannot be given a work authorization, "unless the [noncitizen] *is lawfully admitted* for permanent residence *or otherwise would (without regard to removal proceedings) be* provided such authorization." 8 U.S.C.A. § 1226(a)(3) (emphasis added). Because "the Government has affirmatively decided to treat [Petitioner] as being detained under Section 1226(a)[,] it cannot now be heard to change its position to claim that he is detained under Section 1225(b)." *Patel*, 2025 WL 2996787, at *6. *See also Kennedy v. Kijakazi*, No. 22-2258, 2023 WL 1990303, at *3 (7th Cir. Feb. 14, 2023), quoting *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 24 (2020) (the "[*SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943)] doctrine requires an agency to 'defend its actions based on the reasons it gave when it acted' in the interest of promoting agency accountability, instilling confidence in agency decisions, and maintaining an orderly process of review."). Therefore, Mr. Diallo's continued detention pursuant to § 1225 is unlawful.

## REMEDY

The Court turns now to the question of relief. In this instance, the Court cannot conclude that ordering Respondents to provide Mr. Diallo with a bond hearing under § 1226 is an appropriate remedy. Not only is Petitioner's continued detention unlawful, but his original arrest pursuant to the "call in" letter was also unlawful. Under § 1226, a noncitizen may only be arrested pursuant to a "warrant issued by the Attorney General." 8 U.S.C. § 1226(a). But in this case, erroneously believing it had authorization to detain Mr. Diallo pursuant to § 1225(b)(2), Respondents simply

6

placed him under arrest.

Respondents had an opportunity in their papers to argue in the alternative that Mr. Diallo was subject to detention under § 1226 or provide some evidence that a warrant for his arrest had been issued. But they did not. Because Respondents have offered no lawful basis for his detention, the Court concludes Mr. Diallo is entitled to immediate release. *Rivero v. Mina*, No. 6:26-cv-66-RBD-NWH, 2026 WL 199319, at *4 (M.D. Fla. Jan. 26, 2026); *see also Bethancourt Soto v. Soto*, ---F.Supp.3d---, 2025 WL 2976572, at *9 (D.N.J. Oct. 22, 2025). "Forcing a detainee to wait for a hearing for days or weeks more in custody—under who knows what conditions—when he is not lawfully detained in the first place would gut the purpose of habeas review." *Rivero v. Mina*, 2026 WL 199319, at *4. To be sure, there is some indication that immigration judges are refusing to conduct bond hearings entirely under § 1226, so "the grant of a hearing is no remedy at all." *Marco M.* v. *Bondi*, No. 25-CV-4816 (MJD/JFD), 2026 WL 194406, at *1 (D. Minn. Jan. 25, 2026).

\* \* \*

For the reasons shared above, Youssouf Diallo's Petition for Writ of Habeas Corpus is **GRANTED**[4] and the Court **ORDERS** as follows:

1. Mr. Diallo is not subject to mandatory detention pursuant to 8 U.S.C.

---

[4] To the extent Petitioner's Counsel seeks an award of attorney's fees, he must file a separate motion for fees that complies with the Federal Rules of Civil Procedure and the Local Rules of Practice for this District.

§ 1225(b)(2), and Respondents are **PERMANENTLY ENJOINED** from re-detaining him under 8 U.S.C. § 1225(b)(2)(A).

2. Respondents shall immediately release Mr. Diallo from detention; however, he shall remain in Respondents' temporary custody for the sole purpose of Respondents effectuating his return to Newark, New Jersey.

3. Respondents **SHALL** transport Mr. Diallo back to Newark, New Jersey, **at their own expense**, within **36 hours** of the date and time of this Order.

4. To effectuate the purpose of this Court's Order and allow Mr. Diallo to return home, Respondents are also temporarily enjoined from detaining Mr. Diallo pursuant to 8 U.S.C. § 1226 for a period of fourteen days.

5. On or before Monday, February 2, 2026, Respondents shall confirm in writing Petitioner's release from custody and his return to New Jersey.

6. This Court retains jurisdiction over this matter to ensure Respondents comply with this Order.

DATED:   January 29, 2026.

**3:20:24 PM**

BY THE COURT

_____
S. Kato Crews
United States District Judge